## Commonwealth v. Kelley

*R. Merle Heffner*, district attorney, for Commonwealth.

*John C. Schock*, for defendant.

HIMES, P. J., May 24, 1954.—The relevant paragraphs of section 701 of the Game Law of June 3, 1937, P. L. 1225, as amended, June 28, 1951, P. L. 600, sec. 1, 34 PS §1311.701, provide as follows:

"Except as otherwise provided in this Act, it is unlawful for any person to take or kill or wound, or

attempt to take or kill or wound, any game, except during the open season, or to have in possession, either living or dead, any game, or any part thereof, except game lawfully taken during the open season, which may be had in possession up to and including July first of the year immediately following.

"The burden of proof that game, or any part thereof, found in possession of any person after the close of the open season was lawfully taken shall be upon the person in whose possession such game, or part thereof, is found.

"It is unlawful for any person to use any game that has been unlawfully killed or taken, or to aid or assist in the taking, possessing, concealment, or transportation of any game unlawfully killed, or to have in possession for any purpose whatsoever, or conceal the same, any game, or any part thereof, that has been unlawfully killed or taken."

The penalty clause set forth in section 731 of the Game Laws, as amended, 34 PS §1311.731(q), is as follows:

"Any person violating any of the provisions of the sections of this article shall, upon conviction, be sentenced to pay the following fines and costs of prosecution for each offense:

"(q) Except as otherwise herein provided, for hunting, or chasing, or catching, or taking, or killing, or wounding, or receiving, or delivering, or transporting, or shipping or using or concealing or assisting to conceal, or having in possession, or attempting to hunt for, catch, take, kill, wound, or transport contrary to this article, or regulations adopted thereunder by the commission, or for violating any of the provisions of this article relating to the shipping or transportation or removal out of this Commonwealth, or relating to the buying or selling or bartering of;

"II. Each deer one hundred dollars during any deer season; at any other time, one hundred dollars and the person convicted shall be denied the right to hunt or trap anywhere in this Commonwealth, with or without a license, for a period of three years."

On December 4, 1953, 8 or 10 pounds of vension, cut up into chunks and soaking in a pan were found in the home of defendant and his wife. This vension had been brought to their home on December 3, 1953.

An information was lodged before a justice of the peace charging that defendant "did aid or assist in the possession or concealment of parts of an unlawfully killed deer, namely, a big game animal, namely an antlerless deer in closed season, all of which is contrary to Section 701 of the Game Laws for this Commonwealth. . . ." While the last paragraph of section 701 makes it unlawful for any person to aid or assist in the possessing or concealment of any part of any game unlawfully killed, section 731, prescribing the penalties for the offenses defined in section 701, omits entirely the offense of aiding or assisting in the possession or concealment of parts of game. On the contrary it specifies the penalty for each wild animal, without designing the penalty for any part or parts of a wild animal. Thus the fine for having in possession or concealing or assisting to conceal "each deer" is $100.

While defining the possession or the aiding or assisting in the possessing or concealment of part of any game unlawfully killed as an offense, the game laws are silent as to any penalty therefor.

Where a penal statute prescribing the offense fails to provide a penalty therefor, and no common-law crime is involved, does the court have power to impose the penalty?

In Commonwealth v. Crumley, 16 Dist. R. 334 (1907), defendant had in his possession and offered for sale two mocking birds and three red birds. Under the act of assembly then in force to offer or expose for sale mocking birds was prohibited. However, the act of assembly failed to furnish a penalty therefor. The court said: "It is evident that we can impose no penalty for the offer to sell the mocking birds".

In the case of Commonwealth v. Vollmer, 83 D. & C. 250 (1952), the information against defendant charged that he had "in his possession parts of a bear, found in a wild state and protected by the laws of this Commonwealth in closed season." The evidence in that case disclosed that several pieces of bear meat were found in a nail keg next to the furnace in the home of defendant. Defendant was convicted by the justice of the peace, who imposed a fine of $200.

The late Judge Hipple, specially presiding in Elk County, held that, while section 701 makes it unlawful for any person to have in possession any part of any game during the closed season, section 731, prescribing the penalties for the offenses defined in section 701, omits entirely the offense of having in possession any part of game. The court there said:

"On the contrary it specifies the penalty for each wild animal, without designating a penalty for any *part* of a wild animal. . . . While defining the possession of part of a game animal during the closed season as an offense, the Game Law is silent as to any penalty therefor. Consequently the court is without jurisdiction to impose a penalty."

In the Vollmer case the court stated that at the 1951 session of the legislature, House Bill 1056 was introduced to amend clause (2) of section 731 by inserting penal provisions specifically applicable to the possession of portions, as well as the whole, of wild

game. This bill passed both the House and Senate and it was then vetoed. The Governor stated in the veto message:

". . . under existing law there had been some question whether the penalties may be imposed where only a part of the animal or bird is illegally transported or *possessed*. In an attempt to remove any ambiguity in this respect, the bill used amendatory language which is entirely too broad, and if enacted into law will cause more harm than the situation intended to be remedied."

The Governor further stated:

"The language of the bill make the transportation or *possession* of any number of parts of a single animal or bird subject to a separate penalty for each part. Bearing in mind that a single penalty may be as much as $200 it can really be seen that the act, as proposed to be amended by the bill, could conceivably impose a penalty out of all proportion to the infraction of the law involved."

The decision in the Vollmer case squarely holds that where a penal statute prescribing the offense fails to provide a penalty therefor, the court has no power to impose a penalty. Defendant was found not guilty and discharged.

In the case of State v. Artz, 223 Mo. App. 180, 11 S. W. 2d 1074, the court held that an information charging violation of game laws by refusing to permit State examination of pelts should be properly quashed, no penalty being provided.

In the case of Weaver v. State, 17 Ga. App. 738, 88 S. E. 414, defendant baited his lands for the purpose of drawing game birds to such land for the purpose of shooting them or allowing them to be shot. The act of assembly declared that such baiting and killing shall be unlawful. The court there said:

". . . so much of the section as relates to the subject of baiting lands for the purpose of drawing game birds or doves to such land, for the purpose of shooting them or allowing them to be shot, is without any penalty, it being merely declared that such baiting and killing shall be unlawful. It may be surmised that the Legislature held an intention contrary to that expressed, but criminal laws are to be strictly construed; and it necessarily follows that until further legislative action, there is no effective method of enforcing the declaration which makes unlawful the baiting referred to. . . ." The conviction of the Superior Court was reversed.

The rule is stated in 27 Corpus Juris, 955, §20, as follows:

"When the statute prescribing the offense fails to provide a penalty therefor, the court is without power to impose one, unless the offense is one for which a punishment is prescribed by a general statute."

The rule is stated in 38 Corpus Juris Secundum, 29, §18, as follows:

"In the absence of a general statute prescribing the punishment, if the statute prescribing the offense fails to provide a penalty therefor, the court is without power to impose one."

In the case of Commonwealth ex rel. Varronne v. Cunningham, Sheriff, et al., 365 Pa. 68, 73 A. 2d 705, defendant's tractor-trailer had a gross weight in excess of 20,000 pounds on three axles. Under section 903 (*g*) of The Vehicle Code it is provided that "no truck tractor and semi-trailer combined . . . shall be operated upon any highway with a gross weight in excess of 45,000 pounds, or in excess of 20,000 pounds on any axle. . . ."

The penal clause imposed a penalty for the operation of a vehicle with a gross weight exceeding the specified

maximum, but failed to prescribe any penalty for operating a vehicle with an excessive weight on any axle or any wheel.

Chief Justice Horace Stern said in his opinion:

"Since no common law crime is involved no penalty can be imposed by the court unless the statute itself provides such a penalty, and, being a penal statute, it is subject, of course, to the rule of strict construction."

The chief justice further observed as follows:

"Whether the failure to provide penalties for the violation of the other prohibitions in the section was intentional on the part of the legislature or merely an oversight is here immaterial; the Court must construe the statute according to its terms as enacted."

This court now holds that where a penal statute prescribing the offense fails to provide a penalty therefor and no common-law crime is involved, the court has no power to impose a penalty. The Commonwealth has cited no decision of any court holding a different view, and this court has found none. The legislature failed to provide a penalty for assisting in the possession or concealment of parts of an unlawfully killed deer, and the court must construe this penal statute according to its terms as enacted. In view of the foregoing it is obvious that defendant cannot be convicted. Being predicated on a question of law, and not on a determination of the guilt or innocence of defendant, this decision is subject to appeal by the Commonwealth. Commonwealth et rel. Pahlman, 118 Pa. Superior Ct. 175; Commonwealth v. Hallberg, 168 Pa. Superior Ct. 596.

While not necessary to the decision reached, it is deemed appropriate to comment briefly on the application of the second paragraph of section 701 to the evidence in this case. The Commonwealth's position is

that, by virtue of this paragraph, the burden of proof was upon defendant to establish that the game was lawfully taken. This paragraph places the burden of proof on a defendant only where the game is found in his possession "after the close of the open season." December 4th was not "after the close of the open season" for buck deer.

The district game protector testified that there were several chunks of venison of the weight of 8 to 10 pounds cut up and soaking in a pan in the kitchen of defendant's home on December 4, 1953. He was asked:

"Was there any distinguishing feature about the meat which would indicate it was buck meat or deer meat?"

The officer replied, "No, it can't be told that way."

Until the Commonwealth has established that the game in a defendant's possession is the kind or type of game for which the season was closed at the time of possession, there is no burden of proof imposed upon a defendant by the second paragraph of section 701 to show that the game was lawfully taken. However, in view of the conclusion already reached, it is unnecessary to decide whether there is sufficient competent evidence in the record to warrant the conclusion that the game found in defendant's home was the kind or type of game for which the season was closed.

The act of June 3, 1953, P. L. 269, 34 PS §1311.1217, provides as follows:

"Whenever any officer whose duty it is to enforce the laws of this State protecting game, furbearing animals, and protected birds shall, in good faith, bring suit for any violation of such laws, and, for any legal cause, shall fail to recover the costs of record to which he is legally entitled, such costs shall be paid by the Pennsylvania Game Commission."

The information in this case was made in good faith by such an officer.

## Decree

Now, May 24, 1954, defendant, Elmer E. Kelley, is found not guilty, costs to be paid by the Pennsylvania Game Commission.